Thank you very much. Good morning, Your Honors. And may it please the Court, I am Michael Vivoli. I represent the appellants in this case. There are essentially two issues presented by this appeal because, underscoring one of the procedural problems with this case, we have two judgments in the case. I do want to address first the coverage judgment because I think that's one of the more important ones, and it has a bearing on the second judgment. The issue of coverage in this case turned on a case called Murpott. And what Murpott said very clearly and on a limited holding basis was that there is no coverage for constructive eviction of an organization only for a natural person. It is undisputed in this case that the third-party claimant was a natural person. And we pointed out the authorities that say it doesn't matter if a natural person does business under a different name, they are nonetheless a natural person. And even though the natural person has a business with 20 employees? Correct. And, in fact, Murpott addressed in a different way a similar argument, which was in Murpott the insured organization, which was stipulated to be a corporation, argued that because its employees were natural persons, that there was a natural person that was affected and that in some fashion should factor into the analysis. And the Court said, no, no, no. The proper focus is on the third-party claimant. Who is the party with the right of action? That is who you look at to determine the scope of coverage under these kinds of policies. And in this case, again, it is undisputedly a natural person. She was just a DBA, right? Correct. It was undisputedly Jacqueline Jaleas doing business as flagship research, which, again, has no separate legal existence. Could have been a law firm, a solo practitioner, a DBA under legal results, LLC. Exactly, Your Honor. The building itself was originally a business. When the policy was underwritten, it was a commercial building. That's a commercial policy, isn't it? Commercial CGA policy. Correct. Not for residences. Correct. Issued to a commercial landlord, which puts in, I think, proper context to the argument. Thank you. So I think that our issue, or at least our position with respect to that issue of coverage, is fairly clear. I do want to address, because this is an argument made in the Respondent's Brief, which is this issue that the breach of contract exclusion precludes coverage in any event. As we have pointed out, the trial court in the underlying case specifically differentiated and identified what it viewed as the breach of contract, which was the notice of termination telling her that her contract was terminated. And, in fact, during the trial, the trial court limited the presentation of evidence on the breach of contract issue to what had occurred up to that point in time. But the court later in its decision, which formed the basis of the judgment in the case, broke out and specifically identified non-contractual conduct, the posting of signs, commencement of demolition while she was still in her space, the failure to provide security, these acts that the court found in its decision specifically to constitute constructive eviction, which, as we've pointed out in our brief, is a tort. And it is an offense-based coverage that applies specifically to the tort that was found to have been committed in this case. So, again, the breach of contract issue, that is not an appropriate basis. And I do take issue and disagree with the Respondents to the extent they say that the district court found no distinction between breach of contract and tort. What the district court said in its decision was whether it's considered a tort or a contract or some combination of both because of the court's decision with respect to coverage. It doesn't matter. There is no coverage because this was not a natural person but an organization. So with respect to the coverage issues, unless there's any other specific questions from the court. I would like to take up, if I could, the case, which I don't know if I really agree with the case, but that's not my job to agree, Mearpad, the case. And I guess I'm having some worry that Mearpad says more than organization, that it says, and I'm reading Mearpad page 11 of the decision, where it says, the conclusion that person is used in the context of the offense of wrongful eviction refers to only a natural person is further supported by noting the places from which the eviction must take place are places where the person lives. Then it says the relationship between the eviction and the intent, that it be from a place from where people live, is consistent with the places listed in the definition of personal injury. And then I'd say that doesn't have too much to say except that it's adding to its person idea, except that it goes on and cites three California cases, bigger cases that are suggesting that these terms that are here not only suggest person, but evicted from a personal place, not a business place. If I may. You may. My first response, Your Honor, is it's a dicta. Your first response is that's dicta. Correct. I'm having a tough time seeing why they would say it's dicta when they put three cases in there to suggest why it isn't dicta. Because the cases that are cited are for a different principle. What he's talking about is construing policy language together as a whole and how you construe the different definitions. The cases that are cited, for instance. I mean, Warnick, and I don't know if I say it right. I'm from Idaho again. Warwick or whatever it is. That talks about could only mean the occupancy of real property. Not a motor vehicle. Not a motor vehicle. A room is partitioned on the part of the inside. Now we're going to Marietta. Inside such part as lodging and dwelling is a shelter, house, or building in which people live. A premise is a building or a part usually with appearance on the grounds. Then he goes into Webster's knife-glitching dictionary. Correct. And I guess I'm having another trouble. I'm just saying I know your argument is dicta, but it seems a little tough to say it's dicta when they're really laying into it. I understand what the court is indicating. Neither of the cases that are cited draw any distinction between a residential and a commercial premises. Neither of them did. And that wasn't an issue that was framed by, again, the holding of the case. And so each of these cases that are cited, and I did review the same thing, Your Honor, it's talking about different circumstances, the difference between real property and a motor vehicle, the difference between a trespass as opposed to an eviction. But neither of those cases specifically applies to or addresses a distinction between commercial and residential property or tenancies. And there is no published case we searched long and hard in California that draws that distinction. This is the first indication from anybody, and Justice Kroski doesn't cite in any prior case that we submit substantiates drawing that distinction. And, again, when we're talking about a situation. Frankly, I don't have any distinction as to the decision he made. It's got to be a person. I mean, I'm not even sure I go there. But my worry is that I've got to interpret his decision as he was giving it. Again, the case in Murpod, the court was very clear about the issue before it, which was the distinction between organization and person. And, yes, he does go on to say it's further supported by and make some observations with respect to the policy and draws analogies to three other cases that don't directly bear on or have anything I respectfully submit to do with residential versus a commercial tenancy. And, again, this is an insurance policy, a commercial general liability policy, sold to a commercial landlord to assert this position after the fact. We submit it's disingenuous to pass. Well, frankly, one could say the same thing about why it need be a person. I mean, your argument about that it's disingenuous to suggest it can only apply in a residence situation is equally applicable to why does it only relate to persons when it's a commercial liability policy and not to organizations. But he went through and looked at all the language and came to his decision, and all I'm trying to suggest is why is this then dicta? Understood. I think the difference is an insurance company is free to limit the third-party claimants concerning whom they will cover damages, but to sell insurance to a commercial landlord that they're now saying doesn't exist at all. Well, help me out with Meriped, too. In that case, it was a corporation. Correct. Stipulated to be. So, and in this case, it's not a corporation. Correct. What kind of organization would be an organization that's not a corporation that's not a corporation? The case actually talks about that and says, lists corporation other types of legal entities, i.e., corporations, partnerships, or joint ventures, on the other hand, are clearly characterized as organizations. That appears at page 1070 of the Meriped decision. So if we had a joint venture here instead of a DBA. A joint venture between two organizations versus two, or two natural persons. Yeah, two natural persons. That would be a different circumstance. And, you know, how that would turn out is, I suppose, interesting, but it's not. Because I guess it can be recognized as a separate legal entity apart from the individuals, whereas a DBA is not. There is no separate distinction, and that's, again, the Providence case that we cited, which very clearly says if it's a DBA, there is no separate legal existence apart from the owner. A joint venture, though, does. It is recognized as a legally separate entity, if you will. You may want to talk about the bond. Yes. Thank you, Your Honor. The issue we submit with the bond agreement is, it really breaks down to this. The district court was presented with a contract, and the district court was presented with evidence and, frankly, undisputed evidence, that Century knew that it's insured intended to substitute real property collateral. In fact, told them that's the only collateral I have to substitute in place of the collateral that you're going to furnish for this bond. But real property can be converted to cash through a mortgage, so why would? As a factual, practical matter, this all took place during one of the worst real estate collapses in our country's history, and the inability to sell and convert that to cash may not be in the record, but. . . It's not in the record, and it's not in the contract or the stipulation. It's true that it's not in the contract. And we would have to assume, therefore, from what you're saying, is that they knew it was so leveraged already that they couldn't get any cash out. No, what they knew is that the insured had only one type of collateral to furnish, and they then deliberately made the choice to reduce their premium exposure on the cost of the bond to purchase a cheaper bond from a bonding company that would not accept real estate. I understand that. I'm just saying that you're saying that when the parties entered into the stipulated judgment, it was understood the collateral would be just assigning the rights to the . . . Pledging free and clear one of the units or more. One of the units, okay, and you're saying . . . But that could not have . . . They had to understand that they couldn't go to another company, a lender, and take out a second on it or a third or whatever and get cash out to come up with money for the collateral. Certainly the argument was made before the district court that the insured could have done that or should have done that, and that in some fashion impacted or prevented a showing of impossibility. But again, from our perspective, what there was before the district court was admissible evidence that showed a genuine dispute here about whether, in fact, there was an underlying default. And when you're talking about . . . But under California law on contract interpretation, you don't get to extrinsic evidence that there's no ambiguity. I mean, you have to get through that step, and I think the court said there's no ambiguity, right? Well, but there's an issue with respect to the formation. We had issues of procedural and substantive unconscionability, which can consider that evidence. And we've also cited the court to cases which say that under the factual situation presented here, it could have been . . . extrinsic evidence could have been considered on these issues. Frankly, the more important extrinsic evidence had to do with the surety's knowledge, because it doesn't . . . You're right. It doesn't say in the agreement that the insured is going to furnish real estate collateral, but all parties knew that. And so this wasn't extrinsic evidence being presented to contradict the terms of the agreement, but to explain the agreement and the party's understanding and the insurer's subsequent impact or interference with the insurer's ability to perform that agreement. So unless there are any other specific questions, I did want to reserve a few minutes or a little . . . We have a minute. Thank you very much. May it please the Court, my name is Maria Cousineau on behalf of Century Surety. Justice Smith, I think you hit it right on the head when you said that we can't overlook the words that Justice Kroski stated. We cannot overlook the fact that places are, in fact, an important aspect of the MRPAD case. But how can you just . . . I mean, it just boggles the mind to say that you're the insurance company in the business of selling commercial CGL coverage, and now you're saying MRPAD essentially would . . . I mean, it wasn't necessary. They had already come to the decision. They weren't dealing with a distinction between residence and commercial. What they were trying to do was decide whether a corporation, a stipulated corporation, could bring itself within the concept of a natural person. Okay, that's what the focus was. Absolutely. All right. So now you're talking about an insurance policy which is sold to a commercial landlord where they have coverage for eviction from their premises. That's one of the words, premises, you know. It's room and . . . if it was room something and premises. And you're saying that the commercial CGL policy should be construed against the insured based on this language out of MRPAD. Absolutely, Your Honor. Okay. And, you know, California law is pretty darn clear that if there's an ambiguity in an insurance policy, that the burden is on the insurer, not the insured. So how can you justify that the reasonable expectation of a commercial building owner is paying a premium against potential eviction damages, but it really doesn't exist at all? It just doesn't exist because there's no question that this is not a residence. It's not even talked about or conceived as a residence. So what is the provision in there for? There are many questions in there that I would like to try to address. Just one question. I'm sitting across the table from you and I say I've got a . . . you're in the insurance company. I worry about if any of my tenants in my commercial building, what happens if they get evicted? Well, you're saying there's this clause down here, but it doesn't apply to you because it's not a residence. If 350 had gone to its broker and said, I want to acquire a policy that protects me for eviction of my commercial tenants, then we might have a different issue. This is a commercial general liability. It provides all sorts of coverages for a wide variety of issues. Yeah, having to do with my home, with . . . How would residences get into it? Absolutely it does not. But there are times that this same policy might be issued to an apartment building owner, in which case this policy will provide coverage for eviction of those residences. And there's great reason why a commercial . . . this is a standard policy issued out there. There is very good reason why insurers would limit it and say, we are going to grant coverage for the eviction of residents, of people from their homes, because it's much easier . . . If it was a commercial policy, I mean, if you have a commercial building, you're going to have partnerships and all kinds of things in there, aren't you? Isn't that contemplated? Absolutely. Agreed, Your Honor. And I think that creates the problem. MIRPAD has told us that it is the eviction of a person from a place that they live, that this grant of coverage provides. Okay, so when I look at the policy and it says room, dwelling, or premises, why . . . what is a premises? This is where we get into the Latin phrase. Premises is absolutely broader than room or dwelling. And it certainly is not limited to residences. Correct. Except the MIRPAD California law has told us that premise does relate to . . . Only to residents. Residences. And there is a reason, Your Honor, because several reasons. First of all, a . . . They buy the wrong policy, the wrong coverage. What's going on? They bought a commercial general liability that protected them from all sorts of things. If they injured somebody, if they damaged somebody's property, 350WA got a very large policy covering all sorts of things. That policy also happened to provide a coverage grant for residence evictions. Now, there are many items in this policy that 350WA would never use. Products, putting out into the workplace that might injure somebody. That's something that this commercial landlord may never have to use. But that doesn't . . . The U.S. Tech would probably be confronting evictions, and I think . . . Let me ask you a question. Mind boggling. Has your analysis of this case, as it relates to eviction of a natural person from a personal residence, ever been cited in any other case? Has the MurPad decision been cited? For that proposition, in any other case. The MurPad case has been decided . . . For that proposition. I'm afraid I didn't . . . I'm not sure which . . . For the proposition that this must be a natural person out of a private residence, rather than a business residence. None of the cases that have followed or discussed MurPad have focused on that residence issue. Agreed. And my worry . . . Sorry. And my worry is that, and that's why I ask counsel, why is that finding essential to that decision? As Justice Kroski stated . . . While Justice Kroski didn't state anything about it, Justice Kroski was stating about a natural person and trying to find a natural person. And, oh, as a throw-in, I'll tell you that it's a natural person because it would be out of a personal situation. Exactly. But that reasoning, that is additional reasoning that led him to the conclusion that person does not include a business entity. And this court in U.S. v. Cruz said, the factors a court uses and the reasoning it employs in its conclusion cannot be discarded as dicta. The reasoning involved includes the fact that we have eviction from a residence. And if I may, one of the reasons that it is appropriate, if we were to say that a DBA, we follow MURPAD, and a DBA is, according to appellant, a person, and a corporation is not, which MURPAD tells us, and then we have a joint venture. If we have all three of those on the same floor . . . Capitalization. No, if we . . . Capitalization. Hypothetically speaking, if we had all three of those on one floor, and there is an eviction of all three, then 350 would obtain coverage for perhaps one, maybe two of them. One, the DBA. That's an inconsistent result. Well, then draft your policy better, but that's your problem. If there's an ambiguity, if there's an ambiguity in the contract, California law is construed in favor of the insured, or in favor of coverage. And as the California courts have stated, there is no ambiguity in this policy. There is no reason to go beyond the MURPAD case. Let me ask you this. In MURPAD, because it was a corporation, they didn't really have to decide the precise issue we have here. They didn't go beyond that issue, beyond corporation, but . . . Let's suppose this, then. Okay, I'll take your example. Let's suppose they have a mixed use. They have residences on the top floors, and they have businesses on the bottom floors. Under your analysis, the people on 350's building, people will get eviction coverage for the people on the top floors, and they won't get it for people on the bottom floor. Yes, Your Honor. Okay, so that's the difference? They're on different floors? No, that they are evicted from a place that they were in. So you're saying that under your policy, 350 will get coverage for some, but not for all? But the distinction is that they get coverage for all the residences. What I was explaining is that you have . . . I understand what you were explaining, but you were trying to draw this conclusion that somehow it would be ridiculous to have a policy that on the same floor where you've got a corporate structure and a DBA and another, well, they'll get coverage for eviction for one of those occupants, but not for the next one. You go up a floor, they'll get coverage for everybody. And the difference is that up a floor is a residence. Those are people from places that they live, that the MRPAT says. I take it that if this had burned, you know, there's coverage for other kinds of . . . Absolutely. . . . policies. So if there had been a fire or theft or something . . . Absolutely. . . . there would have been coverage regardless of what kind of entity it was. Absolutely. You're saying that this particular provision is just an eviction that maybe got put in here, whatever, that maybe it shouldn't have been put in here at all, I guess, but in a commercial . . . Correct. . . . but it is limited to a residence. Correct. And this is a business entity. And MRPAT, I submit, MRPAT applies to business entities, as opposed to a person based on the way that they have formed their corporation or their company, the way they've chosen to operate it. That should not decide coverage. Because this may be nothing more than dicta or it may be a holding, what is your position that we ought to send this over to the California Supreme Court? Your Honor, the standard for that is that there's a persuasive indication that the Supreme Court would rule differently than MRPAT. And there is no indication. MRPAT . . . Well, it may be that I would be persuaded that I won't rule differently than MRPAT, and this is pure dicta. If . . . Your Honor, again, I think the standard is that there is an indication that the California Supreme Court would rule differently than its court of appeal. Okay. The California Supreme Court may not . . . may have enough to do. And there has . . . they challenged MRPAT. They took it up on a writ and it was rejected. You may want to talk about the bond. Yeah, I will. The . . . I'll quickly jump to that. A couple of very quick things about the bond. First and foremost, the appellant seeks what appears to be a trial on this issue. And I submit the appellant had a trial on this issue. Every bit of evidence that they suggest needs to be considered by this court was considered and is discussed in the court's decision, in its order. This is a stipulated judgment. The court decided there was no impossibility and no unconscionability when it entered the judgment. The fact that it did so under Rule 54B was at appellant's request. They requested 54B judgment so that it could come up here on review immediately. That made perfect sense. Century did not oppose that matter. The court acquiesced, and then ultimately they were consolidated because the second one came rather quickly. The trial court did not decide the issue of the bond based on the MRPAT coverage decision. The trial court based it on the policy itself, which says we will pay the cost of bonds to release attachments, but only for bond amounts within the limits. We do not have to furnish these bonds. 350 requested Century's help for six months. Century agreed. We will provide the collateral for six months. We have no obligation to do so. Six months passed, another six months passed, two years passed, nothing. They go to the court and say, please enter this judgment. And that's exactly what the court did. The court heard all the evidence that appellant has asked to present and ruled against them. That stipulated judgment, there is no error in the court entering judgment on that stipulation. Any further questions? Thank you. Thank you, Your Honors. Thank you. A very brief clarification. With respect to 54B, we didn't seek certification of the judgment on the bond. We sought certification at the district court's suggestion on the issue of coverage. So that, you know, and that is when notably the district court noted the one-judgment rule and said there is no reason to depart from that in this case, which it already had when it entered a stipulated judgment previously. With regard to the ambiguity issue, the court noted the reasonable expectation of the insured. It's important to remember that at the time this policy was sold to 350, MURPOD didn't exist. MURPOD came down after the policy was issued, after the lawsuit was filed, after the judgment had been entered, and after the lawsuit between these parties was already going on. So that bears on the reasonable expectation. I do want to read from our opening brief. But as to reasonable expectations, really, we're only going to find a problem if there is an ambiguity. Which the Illinois court, in the case we cited, did say that there is an ambiguity. I understand, but MURPOD doesn't seem to think there's any ambiguity. Because MURPOD was reaching different facts, which dovetails into the quote I wish to read, which is, quote, general expressions and opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts. That's exactly what we have here. Justice Klosky was not addressing the issue of residential versus commercial. This case undisputedly involves different facts. MURPOD and the dicta, or as the court calls it, general expressions of opinions that go beyond the facts before the court, should have no control with respect to the determination of coverage in this case.
judges: Schroeder, Fisher, Smith N. R.